# SELMA & MERIDIAN RAILROAD COMPANY vs. BUTTS & FOSTER.

[ACTION AGAINST RAILROAD COMPANY, AS COMMON CARRIER, FOR NEGLIGENCE AND CONVERSION OF GOODS.

1. *Common carriers; railroad companies liable as.*—The railroad companies of this State are common carriers, and they are liable to the strictest accountability for all losses occasioned by their neglect to discharge the duties attached by law, to the trust of common carriers.

2. *Same; duty of railroad company, forwarding goods to destination, beyond its terminus.*—A railroad company that undertakes to carry goods over its road, and forward them to a place beyond the termination of its line of transportation, is bound to deliver the goods to the consignee, with notice of the ultimate destination and ownership of such goods.

3. *Same; notice to consignee, how given.*—The notice must be given by some agent or servant of the company, specially charged with that duty, and in a reasonable time after the goods have reached the point of reshipment, from which they are to be forwarded. In such a case, notice to one member of the firm, who are consignees, is sufficient; it need not be given to each member of the firm.

APPEAL from the Circuit Court of Dallas.
Tried before Hon. JOHN MOORE.

THIS is an action commenced, by Butts & Foster, against the Selma & Meridian Railroad Company, by summons and complaint, on the 6th day of April, 1866, in the circuit court of the county of Dallas, in this State, for the value of thirty bales of cotton. The complaint contains four counts. The first is for shipping said cotton without instructions of the owners, and its loss thereby. The second, for shipping said cotton to improper persons, at

Selma, without the knowledge and instructions of the owners, and its loss. The third is on an agreement to transport said cotton and deliver the same to H. A. & A. G. Stolenwerk, at Selma, which agreement was broken by a delivery to Burnett & Rixey, at Selma; whereby said cotton was lost to plaintiffs. And the fourth is for a conversion of said cotton by defendants. The defendant pleaded the general issue with leave to give any special matter in evidence on the trial, which could be pleaded or replied.

The bill of exceptions shows that the plaintiffs delivered to the defendants' agent, on the 18th day of August, 1865, at Newbern, on their railroad, thirty-three bales of cotton, to be transported to plaintiffs, at Mobile, in this State. This cotton was taken to Selma on the day it was delivered to the agents of defendant, at the station of Newbern. On reaching Selma, the cotton was delivered to Burnett & Rixey, ware-house keepers and forwarding merchants, at that place, on the day it reached Selma, or on the next day thereafter. Burnett & Rixey failed to forward it to the plaintiffs at Mobile, until after the lapse of more than sixty days after its delivery, and it was finally lost to the plaintiffs; that said cotton was worth about $250 per bale. The testimony was uncertain whether the plaintiffs instructed the agents of defendant to ship said cotton to said H. A. & A. G. Stolenwerk, or to said Burnett & Rixey, at Selma, to be forwarded to plaintiffs at Mobile. It also appeared that no notice was given by defendant to said Burnett & Rixey, at Selma, to forward said cotton to plaintiffs at Mobile, except what was told them by the witness, Carter, which was this : " On the morning of the 19th August, 1865, witness was at the ware-house of Burnett & Rixey, at Selma, and saw said cotton brought into that ware-house ; that George P. Burnett, of the firm of Burnett & Rixey, was present at that time, and witness informed said Burnett of the seizure of said cotton, at Uniontown, and that it was seized because there was no permit to ship it; that said George P. Burnett, in that conversation, said that he would write to Butts & Foster for the shipping papers for said cotton. Said witness stated that it was no part of his duties to notify consignees of the

arrival of freight, or to furnish copies of manifests; that the conversation he had with Burnett was accidental, and not had in the regular discharge of his duties, as agent of the depot." The freight manifest, sent with said cotton, showed that it was consigned to Burnett & Rixey, at Selma, to be forwarded to plaintiffs at Mobile. But it did not appear that Burnett & Rixey saw the manifest, or knew its contents.

Upon the trial, the court charged the jury—" 1. That if they were satisfied from the evidence that the cotton was received by defendant, at Newbern, with instructions to be forwarded to Butts & Foster, Mobile, care of Stolenwerk & Brother, Selma, and was sent by defendant's agent, contrary to their instructions, to Burnett & Rixey, Selma, then plaintiffs would be entitled to recover the value thereof, and interest thereon, from defendant."

" 2. That if they were satisfied from the evidence, that the cotton was left with defendant, with instructions, to its agent, to be sent over its road to care of Burnett & Rixey, Selma, to be forwarded to Butt & Foster, Mobile, as shown by the manifest, then it was the duty of defendant, by its proper agents, on its arrival, to notify the consignees thereof, and to deliver the cotton to them, with notice of its destination and ownership, as shown by the manifest; and if they failed to give this information, and by reason thereof the cotton was lost to the plaintiffs, they are entitled to recover the value of the cotton and interest thereon. It was not necessary that this notice should be given in writing, or by furnishing them a copy of the manifest; if given orally, by a proper agent, it was sufficient; but a mere casual statement thereof, by one not having charge of that portion of the business, would not be sufficient; that they could look at the declarations of Burnett to Carter, together with other evidence in the case, in ascertaining whether Burnett & Rixey were properly informed thereof, and that if given to one of the firm, it was sufficient." To this latter charge, the defendant excepted, but not to the former. The verdict and judgment were given for the plaintiffs below, and the defendant appealed to this court.

PETTUS & DAWSON, for appellant.
MORGAN & LAPSLEY, *contra.*

[No briefs came into reporter's hands.]

PETERS, J., (after stating facts as above).—The railroad companies of this State are common carriers. A common carrier is one who undertakes, for hire, to transport from place to place the goods of such persons as choose to employ him (Pierce on R. R. Law, p. 46). They are public agents, and for reasons peculiar to the important trusts which their employment involves, they are properly held to the most stringent responsibility. They are, to a certain extent, the insurers of the goods entrusted to them for transportation, and they are bound to deliver them agreeably to their engagements, except when prevented by the act of God, or the public enemy, or by default of the owner himself. The business of the whole country, and the vast necessities of commerce, require that these important means of transportation shall not be abused to the injury of the citizen. They are, therefore, held to the strictest accountability for all losses occasioned from their neglect to discharge any of the duties attached by law to the office and trust of common carriers (2 Kent, 597, *et seq.* ; mar. Pierce on R. R. Law, 409, *et seq.*)

It is the duty of a railroad company, in this State, as it is of a common carrier, to receive and keep safely the goods delivered to it for transportation, and to send them forward to their destination, with reasonable dispatch, after they have been accepted for shipment. And after their arrival at the place to which they have been directed by the shipper or owner, to be sent, they should be delivered to the person to whom they have been directed, or his properly authorized agent, upon demand, or within a reasonable time thereafter. And if the contract of shipment requires the goods to be deposited in the ware-house of the company, at the end of their line of transportation, the goods should be safely kept until they are called for by the party authorized to receive them. For any injury or loss the goods may sustain, after they have been received for trans-

portation, by improper handling, careless transportation, or delivery, the company is responsible. (Pierce R. R. Law, 411, 412, 448; Story on Bailm., s. 491, *et seq.*)

And if the railroad company first receiving the goods for transportation, takes charge of them, to be carried over its own road to the end of its line, or to some specified . point on such line, to be thence forwarded to a person beyond its own means of transportation, and such goods are directed to a particular consignee, at the place where the goods are first to be delivered and trans-shipped, it is the duty of such railroad company to deliver the goods to such consignee with notice of the instructions of the consignor or owner, to have them forwarded to the place of their ultimate destination. This notice should be given in a reasonable time after the arrival of the goods at the point of re-shipment, and by some agent and servant of the company, particularly charged with the performance of this duty. (Pierce on R. R. Law, pp. 449, 448, 446, 440, 436, 435, 434, 425; 2 Kent, pp. 597, 598, 604, 608, 606; Story on Bailm., §§ 494, 490.)

The charge of the circuit court, objected to, being in conformity with this opinion, is correct. The judgment of the court below is, therefore affirmed.