Eleanor **HARE**, widow of John Hare, Deceased, Plaintiff,

v.

**FEDERAL COMPRESS AND WAREHOUSE COMPANY and Russell Ozanne, Jr., Defendants.**

No. EC 72–73–S.

United States District Court,
N. D. Mississippi, E. D.

May 14, 1973.

John L. Long, William S. Lawson, Tupelo, Miss., for plaintiff.

Robert G. Krohn, Price & Krohn, Corinth, Miss., W. P. Mitchell, Mitchell, Rogers & Eskridge, Tupelo, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court on separate motions for summary judgment filed by defendants Federal Compress and Warehouse Company (Federal) and Russell Ozanne, Jr. (Ozanne). The motions have been submitted to the court for decision on briefs without oral argument.

The court has considered the affidavits and depositions on file, as well as memoranda of the parties and the entire record. The facts giving rise to the action are without substantial dispute.

The action is one for damages proximately resulting from the alleged wrongful death of John Hare at Tupelo, Mississippi on January 25, 1972. At the time of the occurrence giving rise to Hare's death, he was engaged, as an employee of Central Electric and Machinery Company (Central), in the excavation of a ditch or trench into which was to be placed a sewer line connecting the rest rooms and other facilities of Federal with the trunk or main sewer line of the city in a street approximately six hundred feet from Federal's property. The line passed under a railroad spur leading from the railroad's main line to the warehouse of Federal and followed generally a road or passageway from the street to the warehouse.

The ditch in which Hare was working had been excavated to a depth of approximately fifteen feet. While Hare was in the ditch engaged in the performance of his duties, the side or sides of the ditch caved in, burying Hare under the dirt and smothering him to death.

Plaintiff, widow of Hare, filed the action sub judice originally against Federal and J. E. Staub and Company (Staub). The court sustained Staub's motion for summary judgment when it was made known to the court that Staub was not in any way connected with the construction of the sewer line. Thereafter, plaintiff amended the complaint to add Ozanne as a party defendant.

The uncontradicted facts, as reflected by the affidavits, depositions and admissions on file, reflect that Federal contracted with Ozanne on March 17, 1971 to construct certain improvements to Federal's Tupelo, Mississippi property. The contract is in writing and plaintiff concedes in her memorandum submitted to the court that, as a result of the contractual relationship of the parties, Ozanne occupied the legal status of an "independent contractor" to Federal. Ozanne contracted to perform the work called for by Federal's plans and specifications for a fixed fee. Federal looked to Ozanne for the completed project and did not retain any right to direct, nor did Federal, at any time during the work, direct the manner or means by which the work was to be accomplished. The work which involved the construction of the sewer line was the subject of a change order to the original contract.

Ozanne was not equipped, nor did he have knowledge of, or experience necessary to undertake the installation of the sewer line. Ozanne, therefore, subcontracted the work to Central, a firm experienced in this field. The specifications for the sewer line prepared by Federal consisted of design drawings for the sewer line. The drawings and designs prepared by Federal did not contain any engineering data or specifications, except for a notation on a plot plan that the "San. sewer line to be 8″ @ 0.4% slope. Varify [sic] all distances to street". The sewer line was drawn on the plot plan, to indicate the direction of the line and its location with reference to existing structures.

Before entering into the subcontract with Central, Ozanne furnished Central with the design plan furnished him by Federal. Before commencing the actual construction of the line, Central independently acquired the engineering data necessary for the construction of the line and prepared the engineering drawings and specifications for the performance of the work. Neither Federal or Ozanne had any connection with the preparation of the drawings and specifications or the assembling of data for the preparation thereof, except the designation of the location, size, and slope of the line on the original plot plan. As has been noted, Central was an experienced operator in the construction of sewer lines, and the details of the work and the manner in which it was to be performed were left to its discretion by the parties.

The plaintiff contends that Hare was not furnished with a reasonably safe place within which to perform his work, in that the banks of the ditch were not braced or shored at the place where Hare was working to protect him against the cave-in. Defendants are charged with negligence which proximately caused or contributed to the incident and to Hare's death in that they owed Hare the duty to supervise, regulate and inspect, at regular intervals, the work as it progressed; to cause the bracing or shoring of the ditch at the job site; to comply with the provision of the Safety and Health Regulations for Construction pertaining to excavation, trenching and shoring as established by the United States Department of Labor, Bureau of Labor Standards, 29 CFR, Part 1518.16, promulgated pursuant to the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 327 et seq. (a law affecting certain public contracts) which were made applicable to employers in certain private works by the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; and to properly operate, maintain, construct, design, excavate, install and supervise the installation of, the said work; all of which duties and obligations were breached by Federal and Ozanne, proximately resulting in the death of Hare.

This case is *Erie* bound and is controlled by Mississippi law.

The action is prosecuted by plaintiff as the widow of the said deceased for and on behalf of the beneficiaries named in Mississippi's Wrongful Death Statute, namely, the plaintiffs and three minor children of said deceased. Plaintiff is authorized by the statute to bring this action. Miss.Code Ann. § 1453 (Supp. 1972).

Plaintiff concedes that Hare was an employee of Central and was subject to exclusive control and supervision of Central. Plaintiff does not contend that Hare was an employee of either Federal or Ozanne, or that either of them owed Hare any duty by virtue of a master-servant, employer-employee, or principal-agent relationship. Plaintiff also recognizes that Mississippi has adopted the general rule that the employer of an independent contractor is not liable for the torts of the independent contractor. See, Levine v. Standard Oil Co., Inc. in Kentucky, 249 Miss. 651, 163 So.2d 750 (1964); Louis Werner Sawmill Co. v. Northcutt, 161 Miss. 441, 134 So. 156 (1931); Texas Company v. Mills, 171 Miss. 231, 156 So. 866 (1934); Kisner v. Jackson, 159 Miss. 424, 132 So. 90 (1931); Cook v. Wright, 177 Miss. 644, 171 So. 686 (1937). See, also, Newman v. Sears, Roebuck & Company, 77 N.D. 466, 43 N.W.2d 411, 17 A.L.R.2d 694 (1950); 57 C.J.S. Master and Servant § 584, p. 355 and Sword v. Gulf Oil Corporation, 251 F.2d 829 (5th Cir. 1958) Cert. den. 358 U.S. 824, 79 S.Ct. 41, 3 L.Ed.2d 65.

While conceding that under ordinary circumstances, defendants would not be liable for damages for the death of Hare, plaintiff contends that the facts reflected by the record herein bring the action within a well recognized exception to the general rule, the exception being that the employer of an independent contractor remains liable, regardless of the employer-independent contractual relationship, for failure to protect the servants of the independent contractor against unreasonable risks. Mississippi has in fact departed from the general rule in a number of cases. See, Yazoo & M. V. R. Co. v. Gordon, 184 Miss. 885, 186 So. 631 (1939), where an independent contractor negligently permitted a steer to escape while it was being loaded for the owner in a cattle car, resulting in injury to a member of the general public; Nasif v. Hawkins, 212 Miss. 834, 55 So.2d 497 (1951), where the owner of certain real property was held liable to an adjacent landowner when his independent contractor negligently undermined the foundation of the building situated on the adjacent land while excavating for such owner on the owner's property; Federal Compress and Warehouse Company v. Swilley, 252 Miss.

103, 171 So.2d 333 (1965), where the compress company's independent contractor placed an electrical device, capable of producing sparks, in a highly flammable atmosphere with the result that a fire destroyed a third party's cotton.

It is to be noted that in each of these cases the injured party was a member of the general public and was not a servant of the independent contractor as is the case in the action sub judice.

The contention of plaintiff simply stated is that defendants owed plaintiff's decedent the duty of furnishing decedent with a reasonably safe place in which to work while excavating the ditch; that reasonable care dictated that the banks or sides of the ditch be protected by shoring, or some other device, to prevent the soil or loose dirt from caving into the ditch or trench where plaintiff's decedent was at work; and that defendants failed to perform this duty, as the result of which the decedent lost his life. The court notes that the place where Hare was working at the time of the unfortunate occurrence was necessarily created or brought into existence by the very nature of the work itself. The Mississippi Supreme Court held in Craig v. Craig, 192 Miss. 271, 5 So.2d 673, 674 (1942) in a case involving the construction of a building, ". . . [b]ut it has been long settled in this State, in accord with the authorities elsewhere, that the obligation of an employer to use reasonable care to furnish his employee a reasonably safe place in which to work has no application to the construction and repair of buildings, and the like, where the risks and dangers are those which arise during the course, or as a part of the progress, of the work which relate directly to features which are, or become, integral portions of the building of structure itself,—and which do not involve hidden dangers against which the employee cannot protect himself and at the same time do his work. . . ." The action sub judice involves the excavation of a ditch and not the construction of a building.

*Craig* may not be controlling on the question of the negligence of Hare's employer in failing to provide some protection for Hare, while he was in the ditch engaged in the excavation. It does throw some light on whether the construction of the sewer line could be considered as creating an unreasonable risk from which defendants could not exonerate themselves, and because of which they would owe Hare the duty of making the place where he was working reasonably safe for such work.

The defendants cannot isolate themselves from their own negligence through an independent contractor relationship with Hare's employer. In Ingalls Shipbuilding Corporation v. McDougald, Miss., 228 So.2d 365, 367 (1969), the Mississippi Supreme Court observed:

Ordinarily a prime contractor is not liable for the torts of an independent contractor or of the latter's servants committed in the performance of the contracted work. This is based on the theory that the contractee does not possess the power of controlling the person employed as to the details of the work. However, one who employs an independent contractor is nevertheless answerable for his own negligence. . . .

The question presented to the court on this issue is whether the construction of the sewer line presented such an unreasonable risk for the employees of the subcontractor or was so inherently dangerous as to impose upon Federal and Ozanne the duty of providing a safe place for the work to be performed, or whether the construction of the line was a simple matter. The Mississippi Supreme Court observed in Nasif v. Hawkins, *supra*, 55 So.2d at page 500, "[t]he mere digging of a ditch ordinarily is a simple matter".

The court holds and so finds that the construction of the sewer line, involving the excavation of the ditch or trench, when viewed in light of the undisputed facts reflected by the record,

was not inherently dangerous, and did not involve such unreasonable risks as to charge Federal or Ozanne with the duty of providing Hare, Central's employee, with a place reasonably safe for the performance of his duties. Such duty was, by law, imposed upon Central, by whom Hare was employed. Any action which plaintiff might have for Hare's wrongful death can be prosecuted against Central alone and is controlled by Mississippi law.

■ The court is also of the opinion that plaintiff cannot predicate an action for Hare's death against defendants under the exception of the general rule. The court is of the view and so holds that the benefits of the exception do not run in favor of Hare's statutory beneficiaries.

The Fifth Circuit held in a case involving Texas law, ". . . [t]hat the rule that an employer of an independent contractor is liable to third persons for negligence of the independent contractor in the performance of work inherently dangerous does not extend to employees of the independent contractor, . . ." Sword v. Gulf Oil Corporation, *supra*, 251 F.2d at 836.

While the Mississippi Supreme Court has not adopted the Texas rule, the indications are that such would be, should the court be faced with the issue.

In Lancaster v. Lancaster, 213 Miss. 536, 57 So.2d 302. (Miss.1952), the court concluded that the work there involved was not inherently dangerous so as to bring the case within the exception here discussed, thus making it unnecessary in disposing of the case to decide the issue of whether an employee of an independent contractor could take advantage of the exception. However, in discussing the matter the court cited with approval the Texas rule, and said:

> The only plausible theory under which Michael's conduct could be left open as a factual issue is that there remained a duty to protect the servants of the independent contractor against unreasonable risks. It re-

tained no control over the means and methods whereby Bob Lancaster was to prosecute his work. Indeed the subcontractor testified that Michael did not supervise or control him and that he was his own boss using his own methods. It is to be stressed that this case does not involve an injury caused to a third person. The exceptions to the complete responsibility of an independent contractor find no place here since the injury was suffered by a servant of the independent contractor. It has often been announced that even if the work is inherently dangerous, the contractee does not remain liable for injuries caused by a servant of an independent contractor by the negligence of the latter, and that such servant is not a third person under the doctrine covering this relationship. 57 So.2d 305.

The court is confident from the observations expressed in the above quotation from *Lancaster*, though in the legal sense dictum, that the Mississippi Supreme Court would hold on the issue, if and when presented, that the exceptions to the complete responsibility of an independent contractor find no place where the injury suffered is by a servant of an independent contractor.

■ The court is also of the opinion that liability cannot be fixed upon defendants by virtue of Safety and Health Regulations above mentioned. These regulations do not enlarge the responsibility of Federal or Ozanne under the facts in this action. The Occupational Safety and Health Act of 1970, 29 U.S. C. § 651 et seq., specifically provides that the act does not "enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course, of employment". 29 U.S.C. § 653(b)(4).

The regulation upon which plaintiff relies, 29 CFR, Part 1518, published in the Federal Register, Volume 36, Num-

ber 75, Part II, dated April 17, 1971, cannot be used as a vehicle to fasten liability upon defendants.

The court concludes that the motion for summary judgment of each defendant herein, is well taken and should be sustained and the complaint dismissed on the merits.