PARKER, Justice.[1]
■ This is an appeal from the Houston Circuit Court, which entered a summary judgment for defendant Call-A-Cab, Inc., d/b/a AAA. Cab Company (“AAA”), reasoning that “an employer is not liable for the *72 sexual misconduct of its employee even in a common carrier case involving a taxi.” Because the trial court's judgment overlooks Alabama’s long-standing tradition of holding common carriers liable for assaults on their passengers, we reverse and remand.

I.Case History

The facts, as alleged by Kristi Connell, the plaintiff below, are as follows: In December 2003, Connell telephoned AAA and requested transport by taxi to her place of employment. Anthony Hamlin, a driver for AAA, was dispatched to transport Con-nell. After picking Connell up, instead of proceeding to her place of employment, Hamlin transported her to a side road where he allegedly sexually assaulted her. Hamlin was subsequently arrested and charged with sodomy. Connell sued AAA and Hamlin, alleging as to both assault, the tort of outrage, and trespass to her person. She further claimed damages from AAA based on AAA’s alleged negligent employment of Hamlin.
AAA filed a motion for a summary judgment, which the trial court granted after a hearing. The handwritten summary-judgment entry reads simply:
“6/25/04 Defs Motion for Summary J/M is granted on the premise that an employer is not liable for the sexual misconduct of its employee even in a common carrier case involving a taxi.”
The trial court certified the summary judgment for AAA as final pursuant to Rule 54(b), Ala. R. Civ. P. Connell appealed.

II.Standard of Review

“Summary judgment is appropriate only when ‘there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.’ ” Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000) (quoting Rule 56(c)(3), Ala. R. Civ. P.). If the movant makes that showing, the burden then shifts to the nonmov-ant to present substantial evidence creating a genuine issue of material fact.
“In determining whether the nonmovant has created a genuine issue of material fact, we apply the ‘substantial-evidence rule’ — evidence, to create a genuine issue of material fact, must be ‘substantial’ § 12-21-12(a), Ala.Code 1975. ‘Substantial evidence’ is defined as ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Callens v. Jefferson County Nursing Home, 769 So.2d 273, 278-79 (Ala.2000) (footnote omitted). A court deciding a summary-judgment motion “must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable factual doubts in favor of the nonmoving party.” Hollis v. City of Brighton, 885 So.2d 135, 140 (Ala.2004).
The standard this Court applies in reviewing a summary judgment is the same standard the trial court applied in deciding the motion for a summary judgment. “We review a summary judgment de novo.” Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).

III.Legal Analysis

AAA argues in support of the summary judgment that Hamlin was not its employee but was an independent contractor. Whether Hamlin was an employee and, if so, whether he was acting in the scope of his employment at the time of the alleged assault are issues that need not be addressed, because of the high duty a common carrier owes its passengers: “ ‘The *73 duty which a carrier owes to a female passenger to protect her from indecent assaults by its servants cannot be frittered away by questions of whether the servants were acting within the scope of their authority.’ ” Birmingham Ry., Light & Power Co. v. Parker, 161 Ala. 248, 250, 50 So. 55, 55-56 (1909) (quoting from Hutchinson on Carriers §§ 982 and 1101).
Although an employer is generally not liable for the intentional torts of its employees or agents, an exception to this general rule exists for common carriers. Section 37-3~19(a), Ala.Code 1975, provides:
“It shall be the duty of every common carrier of passengers by motor vehicle to establish and provide safe and adequate service, equipment and facilities for the intrastate transportation of passengers in the State of Alabama....”
Decatur Transit v. Jennings, 253 Ala. 322, 325, 45 So.2d 13, 15 (1950), makes clear that taxicabs are common carriers: “[T]he taxicab, a public carrier, owe[s] a high degree of care to its passengers.” This higher, nearly absolute, responsibility placed on common carriers to ensure the safety of their passengers goes back at least to 1869, when this Court noted:
“A. common carrier is one who undertakes, for hire, to transport from place to place the goods of such persons as choose to employ him.... They are public agents, and for reasons peculiar to the important trusts which their employment involves, they are properly held to the most stringent responsibility.”
Selma & Meridian R.R. v. Butts & Foster, 43 Ala. 385, 388 (1869).
Birmingham Railway & Electric Co. v. Baird, 130 Ala. 334, 30 So. 456 (1901), involved a train conductor who had assaulted a passenger. The railroad, like AAA in this case, argued that it was not liable for the intentional tort of its employee. But this Court held:
“[A]s between the carrier and its passengers an entirely different rule prevails. As to them the contract of carriage imposes upon the carrier the duty not only to carry safely and expeditiously between the termini of the route embraced in the contract, but also the duty to conserve by every reasonable means their convenience, qomfort and peace throughout the journey. And this same duty is, of course, upon the carrier’s agents: They are under the duty of protecting each passenger from avoidable .discomfort, and from insult, from indignities, and from personal violence. And it is not material whence the disturbance of the passenger’s peace and comfort and personal security or safety comes or is threatened. It may be from another passenger, or from a trespasser or other stranger, or from another servant of the carrier, or, a fortiori, from the particular servant upon whom the duty of protection particularly rests. In all such cases the carrier is liable in damages to the injured passenger. And it is of no consequence when the wrong is committed by the carrier’s own servant, even that servant particularly charged with the duty of conserving the passenger’s well-being en route, that the act bears no connection or relation with or to the duties of such servant to the carrier and is not committed as an incident to the discharge of any duty; but is utterly violative of all duty and apart and away from the scope of employment as that term is understood in the class of cases first above referred to: The carrier is liable in such cases because the act is violative of the duty it owes through the servant to the passenger and not upon the idea that the act is incident to a duty within the scope of the servant’s employment; and it is manifestly imma *74 terial that the act may have been one of private retribution on the part of the servant, actuated by personal malice toward the passenger, and having no attribute of service to the carrier in it.”
130 Ala. at 343-44, 30 So. at 459-60. The Baird Court quoted approvingly from 4 Elliott on Railroads § 1638:
“ ‘There is much apparent conflict among the authorities upon this subject, but we think some of it is due to the use of the term “scope of employment,” or “line of duty,” in a different sense in different cases, or to a failure to place the decision on the correct ground. It is not merely a question of negligence in such cases, nor is it a question strictly depending upon the scope of the servant’s particular employment. It is a question of the absolute duty of a railroad company to its passengers as long as that relation subsists, and a breach of that duty on its part, whether caused by the willful act of an employee or not.... Either the company or the passengers must take the risk of infirmities of temper, maliciousness, and misconduct of the employees whom the company has placed upon the train, and to whom it has committed the discharge of its duty to protect and look after the safety of its passengers. A passenger has no control over them, and the company alone has the power to select and remove them. It is, therefore, but just to make the company, rather than the passengers, take this risk, and to hold it responsible.’ ”
130 Ala. at 349, 30 So. at 461.
A similar holding is found in Birmingham Railway & Electric Co. v. Mason, 137 Ala. 342, 34 So. 207 (1902). Likewise, in Southern Railroad Co. v. Nelson, 148 Ala. 88, 41 So. 1006 (1906), this Court held that the common carrier must protect its passengers not only against the violence and insults of strangers and other passengers, but also against the violence and insults of the common carrier’s own servants.
In Nashville, Chattanooga & St. Louis Railway v. Crosby, 183 Ala. 237, 62 So. 889 (1913), this Court ruled:
“When the injurious disturbance of the passenger is by the act of the carrier [’]s own servant while he is engaged in its service, and to whom is committed some part of its duty with respect to the custody and safe carriage of its passengers, the carrier’s liability is not grounded on the theory of negligence nor upon the assumption that the act is within the scope of the servant’s authority or within the line of his employment, but rather upon the theory of the breach of an absolute duty resting on the carrier to see that its passengers are not injured by the servants to whose care or custody they have been committed or exposed.”
183 Ala. at 247, 62 So. at 893. The Court also said that “the carrier’s liability for failure to protect from the misconduct of others than its own servants arises only when the wrong is actually foreseen or is of such a character and perpetrated under such circumstances as that it might reasonably have been anticipated or naturally expected to occur.” 183 Ala. at 245, 62 So. at 892 (emphasis added). The synthesis of the holdings of these cases is that the carrier owes a very high duty of care to protect its passengers from injuries by other passengers or strangers, and an even higher, nearly absolute, duty to protect its passengers from injuries by its own servants.
This means the law “requires of [common carriers] the employment of very careful and prudent servants, and of these servants that degree of diligence which very careful and prudent persons take of their own affairs; but infallibility is not expected.” Central of Georgia R.R. v. *75 Robertson, 203 Ala. 358, 361, 83 So. 102, 105 (1919). Thus, the carrier .may escape liability only' for those injuries to its passengers that are inevitable or unavoidable, such as an unforeseeable avalanche, or that do not involve the slightest degree of negligence by the carrier.
Moreover, the duty imposed on common carriers may not be avoided through the common carriers’ use of independent contractors. As this Court stated in Dixie Stage Lines v. Anderson, 222 Ala. 673, 675, 134 So. 23, 24 (1931):
“[A] person is responsible for the manner of the performance of his non-dele-gable duties, though done by an independent contractor, and therefore, that one who by his contract or by law is due certain obligations to another cannot divest himself of liability for a negligent performance by reason of the employment of such contractor. Montgomery Gas[-]Light Co. v. M. & E. Ry. Co., 86 Ala. 372, 5 So. 735 [(1898)]; Mayor, etc., of Birmingham v. McCary, 84 Ala. 469, 4 So. 630 [ (1888) ]; Western Ry. of Ala. v. Turrentine, 197 Ala. 603, 73 So. 40 [ (1916) ]; Baker v. A[tlanta] B. & A. Ry. Co., 163 Ala. 101, 49 So. 751 [ (1909) ]; Southern Ry. Co. v. Lewis, 165 Ala. 555, 51 So. 746, 138 Am. St. Rep. 77 [ (1910) ]; 39 Cyc. 1339; Annotation 29 A.L.R. 737, et seq.; 23 A.L.R. 985, et seq.; Republic, etc. v. Barter, 218 Ala. 369, 118 So. 749 [ (1928) ].
“In this case, if defendant was engaged to transport a party of students on a trip, the law imposed a duty on it to see that it was not done in a negligent manner so as to injure any of them. The defendant could not relieve itself of the responsibility for that duty by engaging the services of a contractor. The duty was to be performed by motorbus service, and the fact that defendant engaged by independent contract one of the busses, in the negligent operation of which plaintiff was injured, did not relieve defendant from liability to plaintiff.
“In some of the cases it is said to be a non-delegable duty; in others it is said that, though defendant by his contract may have imposed upon his contractor the duty, the relation between defendant and plaintiff was not changed, and defendant is liable to plaintiff as though the contractor were the agent or servant of defendant.”
In this case, Connell contacted AAA, not Hamlin, and requested transportation, which AAA agreed to provide. In so providing transportation, AAA assumed a duty to Connell, which AAA retained regardless of whether Hamlin is considered an employee or an independent contractor.

TV. Conclusion

AAA had a very high duty to protect Connell from assault by Hamlin, its driver. There is a genuine issue of material fact as to whether AAA breached that duty. Because a genuine issue of material fact exists, summary judgment for AAA was inappropriate. The judgment of the trial court is therefore reversed and the case remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HARWOOD, J., concurs.
NABERS, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, and BOLIN, JJ., concur in the result.

. This case was originally assigned to another Justice; it was reassigned tó Justice Parker.